# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| L.D.M., a minor, by and through his natural parents and Next Friends, Valentina Matheny and Clayton Matheny VALENTINA MATHENY, individually, and CLAYTON MATHENY, individually, <br><br>Plaintiffs,<br><br>v.<br><br>LMH HEALTH, f/k/a Lawrence Memorial Hospital, LESLIE UNDERWOOD, M.D., EMILY FOX, C.N.M., and PAMELA PRAY, C.N.M.,<br><br>Defendants. | Case No. 20-2491-DDC-GEB |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Combined Rule 26(c) Motion for Protective Order and Rule 30(b)(4) Motion to Require the Deposition of Plaintiffs' Expert, Michael Katz, M.D., by Remote Technology. (**ECF No. 75**.) On November 2, 2021, the Court conducted a motion hearing, during which the Court **DENIED** Plaintiffs' motion. (Order, ECF No. 80.) This written order memorializes the Court's findings at the hearing.

## I. Background[1]

Plaintiffs Clayton and Valentina Matheny, individually and on behalf of their minor child, L.D.M., filed this case alleging medical negligence during the birth of L.D.M. They bring claims against the defendant hospital, LMH Health, and certain healthcare providers, including defendant Leslie Underwood, M.D., a physician; and two certified nurse midwives, defendants Emily Fox, C.N.M. and Pamela Pray, C.N.M. ("Nurse Pray"). Plaintiffs generally claim Defendants' provision of medical, hospital, and nursing care was negligent under the Kansas Tort Claims Act, K.S.A. § 75-6101, *et seq.*, and caused L.D.M. to suffer hypoxic ischemic brain injury. Defendants deny the allegations.

A Scheduling Order was entered in December 2020, establishing a discovery deadline of January 28, 2022. (ECF No. 23). The schedule was later amended to permit additional time for mediation (ECF No. 72), which was unsuccessful, and to extend expert disclosure deadlines (ECF No. 83). The deadline for completion of discovery is now set for February 15, 2022. (Order, ECF No. 83.) This matter has largely progressed without dispute.

---

[1] Unless otherwise indicated, the information recited in this section is taken from the following: Complaint (ECF No. 1); Answer by Pamela Pray (ECF No. 8); Answer by LMH Health (ECF No. 11); Answer by Leslie Underwood (ECF No. 12); Answer by Emily Fox (ECF No. 14); the parties' Planning Report (not filed; maintained in chambers file); and the briefing surrounding the pending motion (ECF Nos. 75, 76, 78). This background information should not be construed as judicial findings or factual determinations.

**II.     Plaintiffs' Motion for Protective Order and to Require the Deposition of Plaintiffs' Expert by Remote Technology (ECF No. 75)**

On August 19, 2021, Nurse Pray filed a Notice of Deposition Duces Tecum that set the deposition of one of Plaintiffs' experts, Dr. Michael Katz ("Dr. Katz"), for November 8, 2021, to be taken by Zoom videoconference. (ECF No. 60.) Plaintiffs contend the date, time, and method of taking the deposition were agreed upon between Plaintiffs' counsel and Nurse Pray's counsel. (*See* Cullen Aff., ECF No. 75, Ex. 1.) Although Nurse Pray initially noticed Dr. Katz' deposition to occur by Zoom, she later amended the notice for an in-person deposition. (ECF No. 73.) Dr. Katz is a resident of New Jersey, while Plaintiffs reside in Illinois and Defendants reside in Kansas. (ECF No. 75; *see* Compl., ECF No. 1.) Plaintiffs contend other depositions have been taken remotely (*see, e.g.*, ECF No. 52, 66; *see also* ECF No. 75 at 2-3) without incident, including another of Plaintiffs' experts, and Nurse Pray should not be permitted to unilaterally rescind the parties' agreement.

Although Dr. Katz does not claim to be in a high-risk category for contracting the COVID-19 virus, he contends his patients—young children and newborns—are extremely vulnerable, particularly because they are unable to be vaccinated. (ECF No. 76 at 6.) Plaintiffs contend defense counsel have offered no concessions aside from stating the attorney who will take the in-person deposition will provide proof of vaccination and be masked. (*Id*.) However, there is no indication other protective measures will be taken, nor has anyone addressed the risk of Dr. Katz' exposure during his necessary travel to and from the deposition location. (*Id*.) Plaintiffs contend Nurse Pray does not articulate

3

any valid reason this particular deposition must be in person, aside from the fact Dr. Katz will be offering standard of care opinions against Nurse Pray. Plaintiffs maintain Nurse Pray will be able to ascertain Dr. Katz' demeanor and appearance actually better on video than in person, where his face will be partially obscured by a mask. Additionally, Plaintiffs offer to provide any anticipated deposition exhibits to opposing counsel in advance, including any handwritten notes created by Dr. Katz. Plaintiffs also opine Dr. Katz will withdraw from his position as an expert, as he never intended to appear personally in this matter. (*See* Katz Aff., ECF No. 75, Ex. 8 at 2.)

Plaintiffs ask the Court to enter a Rule 26(c) protective order limiting the number of persons physically present with Dr. Katz, with all other participants, including the court reporter, attorneys, or parties, "attending" by Zoom or some similar videoconference software. Or, in the alternative, Plaintiffs ask for a Rule 30(b)(4) order requiring that the deposition of Dr. Katz be taken by remote means, and without the presence of any other person with Dr. Katz when the deposition is taken. (ECF No. 75.)

Nurse Pray disputes there was an agreement to take expert depositions remotely. (Response, ECF No. 78.) She contends the initial notice of the deposition by Zoom was a mistake, which was promptly corrected. She also argues Plaintiffs' counsel unilaterally decided all expert depositions would be taken remotely, but she never agreed to doing so, and she has the right to take his deposition in person. (*Id*. at 2.) During the November 2 conference, Nurse Pray's counsel argued Dr. Katz is a vital witness to Plaintiffs' $28 million claim as he is the primary causation expert, designated to opine that L.D.M. suffered a hypoxic ischemic encephalopathy and traumatic brain injury during labor.(See

4

ECF No. 78 at 7.)[2] Nurse Pray contends a videoconference deposition, while more effective than telephone, is still not as effective as in-person communication with the witness.[3] Without seeing the witness in person, body language is not visible and document exchange is more difficult, and counsel are unable to see, for example, any notations on the witnesses' own documents.[4] She contends there are significant records and documents to be reviewed with the witness, and the spontaneous review and discussion is only possible in person. (ECF No. 78 at 5.) Nurse Pray asks to take Dr. Katz' deposition in person, and offers to take additional precautions, such as production of her attorney's vaccine booster shot, wearing of a mask for the duration of the deposition, a large enough room for adequate social distancing, regular handwashing, and plastic barriers. (*Id*. at 4.)

No other party filed a responsive brief to the motion and therefore took no formal position on the issue.

### A.     Legal Standards

Plaintiffs' request for protective order is governed by standards found in Federal Rules of Civil Procedure 26(c)(1) and 30(b)(4).

Federal Rule of Civil Procedure 26(c) permits the court to, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Rule 26(c)(1)(A)-(H) outlines a number of non-exclusive ways

---

[2] The November 2, 2021 hearing was not transcribed; however, it was recorded by the Court's AT&T conferencing service. The audio file is maintained in the chambers' file, as well as the Court's own handwritten notes from the conference.
[3] *See id*.
[4] *See id*.

in which the court may tailor a protective order, by specifying terms for the discovery, limiting its scope, designating persons present during a deposition, and other types of limitations.

Federal Rule of Civil Procedure 30(b)(4) outlines the parties may stipulate, or the court may order, that a deposition be taken by telephone or other remote means.[5] However, this rule "is permissive, not mandatory, and the Court must exercise its discretion in determining whether the moving party has shown good cause for issuance of a protective order requiring that a deposition be taken remotely."[6]

The party seeking a protective order bears the burden to demonstrate good cause for protection.[7] To establish good cause, the moving party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[8]

"The court has broad discretion to decide when a protective order is appropriate and what degree of protection is required."[9] The Supreme Court acknowledges trial courts are "in the best position to weigh the fairly competing needs and interests of the

---

[5] *Manley v. Bellendir*, No. 18-1220-EFM-TJJ, 2020 WL 2766508, at *2 (D. Kan. May 28, 2020).
[6] *Id.*
[7] *Reynard v. Washburn Univ. of Topeka*, No. 19-4012-HLT-TJJ, 2020 WL 3791876, at *2 (D. Kan. July 7, 2020) (citing *Univ. of Kan. Ctr. for Research, Inc. v. United States*, No. 08-2565-JAR-DJW, 2010 WL 571824, at *3 (D. Kan. Feb. 12, 2010) (citing *Reed v. Bennett*, 193 F.R.D. 689, 691 (D. Kan. 2000)).
[8] *Reynard*, 2020 WL 3791876, at *2 (citing *Univ. of Kan. Ctr. for Research, Inc.*, 2010 WL 571824, at *3 (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).
[9] *Manley*, 2020 WL 2766508, at *2 (quoting *Shockey v. Huhtamaki, Inc.*, 280 F.R.D. 598, 600 (D. Kan. 2012).

parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."[10]

### B. Discussion

The Court acknowledges the difficulties encountered by parties and counsel alike during the COVID-19 pandemic. Although Plaintiffs cited some pre-pandemic decisions regarding remote depositions to support their position,[11] the Court finds these decisions generally distinguishable on their facts and analysis.

During the conference, the Court noted its review of two recent District of Kansas cases, *Manley v. Bellendir*[12] and *Reynard v. Washburn University of Topeka*,[13] decided since the beginning of the pandemic. Both were helpful in determining the various factors the Court would consider in resolving whether Plaintiffs demonstrate good cause to take Dr. Katz' deposition remotely.

The Court must weigh the risks identified by Plaintiffs in their motion against the precautions suggested by Nurse Pray and her need to take Dr. Katz' deposition in person. It considers the specificity of Dr. Katz' concerns, the amount of damages at issue in the case, and whether Nurse Pray has a legitimate interest in an in-person deposition.[14]

---

[10] *Reynard*, 2020 WL 3791876, at *2 (citing *Shockey*, 280 F.R.D. at 600 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, (1984)).

[11] Pls.' Mem. in Support, ECF No. 76 (citing *Shockey*, 280 F.R.D. 598; *Proud Veterans, LLC v. Ben-Menashe*, No. 12–CV–1126–JAR., 2012 WL 6681888, at *1 (D. Kan. Dec. 21, 2012); *WIHO, LLC v. Hubbauer*, No. 12–1386–EFM–GLR, 2013 WL 6044424, at *1-2 (D. Kan. Nov. 14, 2013)).

[12] *Manley v. Bellendir*, No. 18-1220-EFM-TJJ, 2020 WL 2766508, at *2 (D. Kan. May 28, 2020).

[13] *Reynard v. Washburn Univ. of Topeka*, No. 19-4012-HLT-TJJ, 2020 WL 3791876, at *2 (D. Kan. July 7, 2020).

[14] *Manley*, 2020 WL 2766508 at *2-3.

After review of these factors, the Court finds they weigh in favor of Nurse Pray's position. A significant mount of nonverbal information is gained through an in-person deposition and such information may not be as easily ascertained through a Zoom deposition. Non-verbal cues are less evident, and the exchange of documents is more difficult. Because Dr. Katz is such a crucial causation expert to Plaintiffs' significant damages claim, the Court finds much could be gained through in-person interaction.

Although the Court finds Dr. Katz' concerns regarding risk of exposure to COVID-19 to be legitimate, the Court finds his concerns to be those of a general nature regarding the risk posed by the pandemic.[15] Although Dr. Katz provides an affidavit, such affidavit does not distinguish how his attendance at a deposition, with the inclusion of significant safety measures, places him in any greater danger than such everyday activities as interacting with his patients or a trip to the grocery store.

The situation before this Court is different than in those cases cited by Plaintiffs. For example, in *Reynard v. Washburn University of Topeka*, the court permitted the deposition to occur remotely, when faced with a 73-year-old plaintiff with multiple underlying health conditions, and her 71-year-old husband with stage 4 cancer.[16] But here, Dr. Katz does not contend he has any personal medical condition that would place him at heightened risk of contracting the virus, or explain how the precautions Nurse Pray describes for the deposition would be inadequate. At this time, more than a year and

---

[15] *Manley*, 2020 WL 2766508 at *3 (noting plaintiff's "very general concerns regarding COVID-19" and finding "Defendant's need and ability to safely depose Plaintiff in person with the precautions outlined by Defendant outweighs Plaintiff's general concerns regarding COVID-19").
[16] *Reynard*, 2020 WL 3791876, at *1-*3.

a half into the pandemic, the Court takes judicial notice of the advances in scientific understanding of virus transmission and resulting knowledge of how to engage in public with lessened risk, as well as the introduction of the COVID-19 vaccinations. The Court is convinced adequate protective measures may be implemented to significantly reduce Dr. Katz, or counsel's, risk of exposure.

Although Rule 30(b)(4) allows a deposition to be taken remotely, this rule "is permissive, not mandatory."[17] As noted, the Court finds Plaintiffs have not established good cause for issuance of a protective order requiring that Dr. Katz' deposition be taken remotely. For these reasons, the Court denied Plaintiffs' request.

However, during the November 2 conference, the Court discussed with counsel the ways in which the deposition might occur to minimize the risk to Dr. Katz and other attendees. The Court suggested Nurse Pray make efforts to conduct the deposition either in Dr. Katz' place of business or somewhere nearby, to minimize his necessary travel and thus minimize outside interaction. The Court also encouraged further conferral between counsel to find a large enough room to ensure adequate distancing and increase Dr. Katz' comfort level.

### III.    Conclusion

For the reasons stated in the November 2, 2021 hearing and recited above:

**IT IS THEREFORE ORDERED** that Plaintiffs' Combined Rule 26(c) Motion for Protective Order and Rule 30(b)(4) Motion to Require the Deposition of Plaintiffs' Expert, Michael Katz, M.D., by Remote Technology (**ECF No. 75**) is **DENIED**.

---

[17] *Manley*, 2020 WL 2766508 at *2.

It appears Dr. Katz' deposition proceeded as ordered. (*See* Second Amended Notice, ECF No. 81.)

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 14th day of December, 2021.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge
